UNITED STATES *v.* HARRY BLANDAMER (No. 3485)[1]

---

United States Court of Customs and Patent Appeals, May 2, 1932

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.
*Puckhafer, Rode & Tompkins* (*George J. Puckhafer* of counsel) for appellee.

[Oral argument February 9, 1932, by Mr. Lawrence and Mr. Puckhafer]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise, consisting of men's straw hats, sewed, valued at less than $9.50 per dozen, was assessed for duty by the collector at the port of New York at 88 per centum ad valorem under paragraph 1406 of the Tariff Act of 1922 as modified by a proclamation of the President dated February 12, 1926, T. D. 41374, 49 Treas. Dec. 307, issued under, and by authority of, the provisions of section 315 of that act.

The pertinent part of paragraph 1406 reads as follows:

\* \* \* all other hats, composed wholly or in chief value of any of the foregoing materials, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, 60 per centum ad valorem. But the terms "grass" and "straw" shall be understood to mean these substances in their natural form and structure, and not the separated fiber thereof.

The rate of duty provided in the involved part of paragraph 1406 was increased by the proclamation of the President—

on men's straw hats, whether wholly or partly manufactured, not blocked or blocked, not trimmed or trimmed, if sewed, valued at $9.50 or less per dozen, from 60 per centum ad valorem to 88 per centum ad valorem.

It was contended by counsel for appellee in the court below, and it is contended here, that, by raising the rate on men's straw hats, sewed, valued at $9.50 or less per dozen, the form, structure, and

phraseology of paragraph 1406 was changed by the President; that the power to perform such an act is legislative in character; that, if the provisions of section 315 could properly be construed as conferring such power upon the President, they were unconstitutional; that the provisions of section 315 prohibited a change in the form of duty; that, by changing the 60 per centum ad valorem rate of duty provided for in paragraph 1406, to an ad valorem duty qualified "by a value limitation," the President did, in fact, change the form of duty; that the President had no power to issue the involved proclamation; and that, therefore, the collector had no authority to assess the involved merchandise at a rate of duty in excess of the 60 per centum ad valorem rate provided in paragraph 1406.

On the trial below, counsel for appellee offered in evidence, among other things, the proclamation of the President, together with a report of the Tariff Commission to the President, dated July 17, 1925. It was contended by counsel for importer, at that time, that "the report does not show the fact that the Tariff Commission considered the matter."

The court below admitted in evidence the proclamation of the President but rejected the report of the Tariff Commission.

The ruling of the court in these respects has not been assigned as error in this court and is, therefore, not before us in this case. There being nothing in the record to indicate the contrary, we must, for the purposes of this decision, assume that a legal investigation was made by the Tariff Commission prior to the issuance of the proclamation by the President.

The court below concurred in the views of counsel for appellee and, accordingly, sustained the protest.

In the case of *United States* v. *Fox River Butter Co.*, cross appeals, suits Nos. 3438 and 3442, 20 C. C. P. A. (Customs) 38, T. D. 45675, decided concurrently herewith, this court said—

But relatively few paragraphs in the Tariff Act of 1922 provided a separate rate of duty for each imported article covered thereby.

A large majority of the dutiable paragraphs of the 1922 tariff act contained one or more provisions, each of which covered many articles at the same rate or rates of duty. Accordingly, if the President lacked authority to describe the particular article or articles on which the rate or rates of duty were to be increased or decreased, the increased or decreased rates, as to each of those paragraphs, would have applied to all, or to none, of the articles covered by a provision fixing a rate or rates of duty. Obviously, it was not the purpose of the Congress to require the President to change the classification, or increase or decrease the rates of duty, on *all* articles, covered by a tariff provision, bearing the same rate or rates of duty, in order that the differences in the cost of production of *one or more of such articles* might be equalized.

Section 315 (c) provided that no proclamation should be issued by the President until an investigation had been made by the Tariff Commission. Accordingly, if the contention of counsel for importer is sound, the President was powerless

to act until the commission had made an investigation of *all* articles covered by a provision fixing a rate or rates of duty, and, if he had found that, as to *some* of those articles, no changes in classification, nor increases nor decreases in rates of duty, were required, he was without authority to act as to *any* of the other articles, even though the investigation showed that an increase or a decrease of rates was necessary. The Congress, of course, never intended that the constitutional and "intelligible plan," to vary the customs duties according to changing conditions of production at home and abroad, provided by section 315, should be so construed.

Section 315 (a) provided that the President should—

determine and proclaim the changes in classifications or increases or decreases in any rate provided in this Act shown by said ascertained differences in such costs of production necessary to equalize the same.

That section also provided—

That the total increase or decrease of such rates of duty shall not exceed 50 per centum of the rates specified in Title I of this Act, or in any amendatory Act.

In view of the fact that section 315 (c) prohibited the—

transfer of an article from the dutiable list to the free list or from the free list to the dutiable list,

and also prohibited "a change in form of duty," it would seem that the purpose, in providing that the classification of an article might be changed, was to afford an additional means whereby the rate or rates of duty applicable to such article or articles might be increased or decreased. Accordingly, we think it is clear from the plain language of the statute that the President had the power to change the classification of an article and to increase or decrease the rates of duty provided in that act, so long as such rates were not increased nor decreased in excess of 50 per centum. The power to describe the particular article or articles on which the rate or rates of duty were to be increased or decreased by the President is necessarily implied from the language of section 315 (a). That section conferred upon the President the power to "determine and proclaim the changes in classifications or increases or decreases in any rate of duty," provided for in the dutiable list of that tariff act, necessary to equalize the differences in costs of production of like or similar articles produced in the United States and in competing foreign countries. Obviously, if the provisions of the statute in question were intended to be given any force and effect, the power to change classifications, or to increase or decrease the rate or rates of duty, must have carried with it the power to describe the articles on which the rate or rates of duty were to be increased or decreased. Such power was not legislative in character. It was but the necessary means to an end—the means necessary to carry out the constitutional and "intelligible plan" of the Congress. *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in 276 U. S. 394.

It is argued by counsel for the importer that the issues before this court and the Supreme Court in the *Hampton* case concerned merely the power of the President to change a rate of duty, and that the involved issues were not considered in that case. Although the power of the President to describe the particular article or articles on which a change of classification, or an increase or a decrease of the rate or rates of duty, was applicable, was not discussed by this court nor by the Supreme Court in that case, nevertheless, such power was so plainly necessary, if the "intelligible plan" of the Congress was to be carried out, that it must have been given consideration.

By increasing the rate of duty on men's straw hats, sewed, valued at $9.50 or less per dozen, provided for in paragraph 1406, the President limited the increased rate of duty to a certain class of articles

This he had the right to do. In so doing, it was obviously necessary for him to describe the articles on which the increased rate was to be assessed.

The second contention of counsel for appellee is that, by limiting the increased rate to articles of a certain value, the form of duty was changed by the President.

The President found that it was necessary, in order to equalize the differences in costs of production at home and abroad, to increase the rate of duty on men's straw hats, sewed, valued at $9.50 or less per dozen. Presumably, he found that it was not necessary to increase the rate of duty on other articles covered by paragraph 1406. Accordingly, in order to limit the application of the increased rate, the President was required to, and did, describe the articles to which it was to apply. He increased, as to them, the 60 per centum ad valorem rate to 88 per centum ad valorem. Obviously, he did not change the form, he merely increased the rate, of duty.

Had the President changed a specific to an ad valorem duty, or an ad valorem to a specific duty, or a simple to a compound duty, or a compound to a simple duty, it might be argued with reason that he had exceeded the authority conferred upon him. However, having merely increased the rate of an ad valorem duty, within the limits prescribed by the Congress, we are of opinion that he acted strictly within the authority legally conferred upon him.

We conclude, therefore, that the court below reached the wrong conclusion. Its judgment is, accordingly, *reversed.*